## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CASE NO. 1:20-CV-231-GCM-DCK

| | | |
|---|---|---|
| CYNTHIA HAYES WOOD, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion for Summary Judgment" (Document No. 16), "Defendant's Motion For Summary Judgment" (Document No. 20), and associated pleadings. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion for Summary Judgment" be denied; that "Defendant's Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

## BACKGROUND

Plaintiff Cynthia Hayes Wood ("Plaintiff"), through counsel, seeks judicial review of a partially favorable administrative decision on an application for disability benefits. (Document No. 1). Plaintiff filed on or about October 1, 2014, an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, and on or about December 12, 2016, an application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, both alleging an inability to work due to a

disabling condition beginning July 11, 2010. (Transcript of the Record of Proceedings ("Tr.") 167, 315, 323, 327).

The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's applications initially on or about February 3, 2015, and again after reconsideration on or about August 3, 2015. (Tr. 192, 201-03). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows your condition results in some limitations in your ability to perform work related activities. While you are not capable of performing work you have done in the past, you are able to perform work that is less demanding. We have determined that your condition is not severe enough to keep you from working. We considered the medical and other information and work experience in determining how your condition affects your ability to work.

(Tr. 167, 202-03).

Plaintiff filed a timely written request for a hearing on or about October 2, 2015. (Tr. 167, 212). On July 27, 2017, Plaintiff appeared and testified at a hearing before Administrative Law Judge Darrell Fun ("Judge Fun"). (Tr. 55-91, 167). In addition, Ellen Levine, a vocational expert, and Susan Whisnant, Plaintiff's then-attorney, appeared at the hearing. Id. Plaintiff amended her alleged disability onset date to December 1, 2014. (Tr. 59, 167).

On October 20, 2017, Judge Fun denied Plaintiff's claim(s) for disability. (Tr. 179). Judge Fun held that Plaintiff was not disabled between July 11, 2010, and October 20, 2017. Id. Plaintiff requested review of Judge Fun's decision, and the Appeals Council granted the request and remanded Plaintiff's case for consideration of additional evidence, as well as for consideration of Plaintiff's substance abuse. (Tr. 12, 264, 188-89).

Following remand, Plaintiff appeared and testified at a hearing before Administrative Law Judge Mary Ryerse (the "ALJ") on February 5, 2020. (Tr. 12, 93-129). In addition, Ellen Levine,

the vocational expert (the "VE"), and Quentin Sanders, Plaintiff's attorney, appeared at this second hearing. Id. Although Plaintiff had previously amended her alleged disability onset date to December 1, 2014, at this hearing she withdrew the amended date and re-asserted the original alleged disability onset date of July 11, 2010. (Tr. 12, 96, 167).

The ALJ issued a partially favorable decision on April 1, 2020, concluding that Plaintiff "was not disabled prior to June 18, 2018, but became disabled on that date and has continued to be disabled through the date of this decision." (Tr. 7, 13, 26). The ALJ also noted that Plaintiff had "sufficient quarters of coverage to remain insured through March 31, 2016," and "[t]hus must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." (Tr. 13).

On or about May 29, 2020, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on June 25, 2020. (Tr. 1, 5). The ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on August 21, 2020. (Document No. 1). On September 8, 2020, the undersigned was assigned to this case as the referral Magistrate Judge.

Plaintiff's "Motion for Summary Judgment" (Document No. 16) and "Plaintiff's Memorandum in Support of Motion for Summary Judgment" (Document No. 17) were filed June 3, 2021; and "Defendant's Motion For Summary Judgment" (Document No. 20) and "Memorandum Of Law In Support Of Defendant's Motion For Summary Judgment" (Document

No. 21) were filed August 4, 2021.[1] "Plaintiff's Response to Defendant's Motion for Summary Judgment" (Document No. 22) was filed August 18, 2021.

"Defendant's Response to Plaintiff's Response to Defendant's Motion for Summary Judgment" (Document No. 25) ("Defendant's Reply") was filed September 22, 2021. Plaintiff then filed a "…Surreply in support of her Motion for Summary Judgment" (Document No. 26) and a "Motion for Consideration of Surreply on Constitutional Issue" (Document No. 27) on October 12, 2021.[2]

The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is now appropriate.

## STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than

---

[1] The undersigned notes that neither Plaintiff's nor Defendant's Memorandum Of Law is organized as required by LCvR 7.2 (b) and (d).

[2] The undersigned further notes that Plaintiff's briefs and motion suggest they were prepared by Michel Phillips. See (Document No. 17, p. 20; Document No. 22, p. 6; Document No. 26, p. 3; and Document No. 27, p. 1). The docket does not indicate that Michel Phillips has filed a Notice Of Appearance, or sought to be admitted *pro hac vice*.

4

create a suspicion of the existence of a fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence.  Hays, 907 F.2d at 1456;  King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations.");  Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.").  "[A] reviewing court must uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence."  Peace v. Berryhill, 2019 WL 2406626, at *1 (4th Cir. June 7, 2019) (quoting Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017)).  Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome.  Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## DISCUSSION

The question considered by ALJ Ryerse was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, between July 11, 2010, and the date of her decision.[3]  (Tr. 12-13, 26).  To establish entitlement to benefits, Plaintiff has the burden of proving

---

[3]  Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

disability within the meaning of the Social Security Act.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled.  20 C.F.R. § 404.1520(a).  The five steps are:

(1)    whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2)    whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3)    whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4)    whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled;  and

(5)    whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps;  if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy.  Pass, 65 F.3d at 1203.  In this case, the ALJ determined at the fifth step that Plaintiff was not disabled prior to June 18, 2018.  (Tr. 24-25).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since July 11, 2010, the alleged disability onset date.  (Tr. 15)  At the second step, the ALJ found that "lumbar spondylosis, lumbar spondylol[is]thesis,  headaches/migraines, chronic obstructive

6

pulmonary disease, bipolar I disorder, anxiety disorder, attention deficit disorder, and major depressive disorder" were severe impairments.[4] (Tr. 15). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 16).

Next, the ALJ assessed Plaintiff's RFC and found that from July 11, 2010, through June 17, 2018, Plaintiff retained the capacity to perform light work activity, with the following limitations:

> can lift/carry 20 pounds occasionally and 10 pounds frequently along with the ability to stand/walk up to 6 hours in 8-hour workday and sit up to 6 hours in 8-hour workday. In addition, the claimant requires the option to alternate between sitting for 30 minutes and standing for 30 minutes throughout the day. The claimant can frequently engage in climbing ramps and stairs, and can occasionally climb ladders ropes scaffolds. The claimant can frequently engage in balancing, stooping, kneeling, crouching, crawling. The claimant must avoid concentrated exposure to dust odors fumes and other pulmonary irritants. The claimant must avoid working at unprotected heights and around dangerous machinery. The claimant is limited to performing unskilled work consisting of routine tasks not at a production rate pace, maintaining concentration persistence and pace for 2-hour periods during the workday. The claimant is limited to frequent interaction with supervisors and coworkers and occasional interaction with the public and requires a stable work environment, which means few and infrequent changes to the work routine.

(Tr. 18); see also (Tr. 24-25). In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (Tr. 18).

---

[4] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

At the fourth step, the ALJ held that Plaintiff could not perform past relevant work as a press operator.  (Tr. 23).  At the fifth and final step, the ALJ concluded based on the testimony of the VE and considering "the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform between July 11, 2010, and June 18, 2018.  (Tr. 24-25).  Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included a laundry folder, a shipping/receiving weigher, and an inspector hand packager.  Id.

The ALJ thus concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, between July 11, 2010, and June 18, 2018.  (Tr. 25).  However, the ALJ noted that on June 18, 2018, Plaintiff's "age category changed to an individual of advanced age" and that beginning on that date, "there [were] no jobs that exist in significant numbers in the national economy that the claimant could perform."  Id.

On appeal to this Court, Plaintiff alleges that the ALJ's decision includes the following errors:  (1) failure to assess all of Plaintiff's impairments;  (2) failure to account for a limitation found by the examining psychologist;  (3) failure to properly account for Plaintiff's migraines and moderate limitation with regard to concentration, persistence, or pace;  and (4) violation of the Social Security Rulings.  (Document No. 17, p. 5);  see also LCvR 7.2 (b).  The undersigned will discuss each of these contentions in turn.

### A.    Evaluation of Impairments

In the first assignment of error, Plaintiff argues that the ALJ should be reversed for failing to evaluate all of Plaintiff's impairments.  (Document No. 17, p. 9).  Specifically, Plaintiff contends that the ALJ did not adequately address:  vertebral fractures;  scoliosis;  an annular tear of the L5-

S1 disc;  chronic pain syndrome;  chronic pain disorder;  and brain microvascular disease or infarcts.  (Document No. 17, pp. 9-12).

In response, Defendant asserts that during the entire administrative process, beginning in March 2014, Plaintiff only alleged that two (2) of these impairments – chronic pain syndrome and scoliosis – affected her ability to work.  (Document No. 21, p. 6) (citing Tr. 364); see also (Tr. 398, 426).  "Simply put, she did not base her disability claims on the impairments she now claims to be disabling."  Id.  Defendant further asserts that Plaintiff "points to no evidence showing that the impairments caused her an inability to work," and that the burden is with Plaintiff to show the impairments had such impact.  (Document No. 21, p. 7).

Defendant acknowledges that "the ALJ did not explicitly address these impairments at Step two," but contends they were considered "at later steps in the sequential process."  Id.  (citing Tr. 19-21).  Defendant notes that the "Fourth Circuit does not require the ALJ to address every piece of evidence."  (Document No. 21, p. 8) (citing Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014)).  In conclusion, Defendant argues that although the ALJ did not expressly discuss some of Plaintiff's impairments, the ALJ decision shows that the ALJ considered the "whole" record and arrived at an "RFC that sufficiently accommodated Plaintiff's limitations."  Id.  (citing Tr. 18, 22).

In reply, Plaintiff agrees that her disability report listed scoliosis and chronic pain syndrome.  (Document No. 22, p. 1); see also (Tr. 364).  Plaintiff then states that she "has a high school education and failed most college classes she tried, so this suffices to notify the ALJ that all low back impairments, and all headache-related impairments, are relevant.'  Id.  Plaintiff seems to conclude that the "ALJ was bound to consider all impairments" whether or not she identified them as impacting her ability to work.  Id.

The undersigned finds Defendant's argument persuasive. (Document No. 21, pp. 6-8). As noted above, the "burden of production and proof rests with the claimant during the first four steps." Plaintiff's suggestion that the ALJ committed reversable error by not explicitly discussing impairments that Plaintiff never alleged caused an inability to work is not compelling. Plaintiff's argument related to her level of education and what the ALJ was, therefore, required to consider or find relevant does not appear to be supported by any authority. Moreover, it appears that Plaintiff has been represented by counsel for most, if not all, of the underlying administrative process.

In short, the undersigned agrees with Defendant that the ALJ decision adequately considered Plaintiff's impairments and symptoms, and that the decision is supported by substantial evidence. <u>See</u> (Document No. 21, p. 7; Tr. 19-21). The undersigned will decline to recommend reversal or remand based on this alleged error.

### B.    Mental Limitation

Next, Plaintiff argues that the ALJ does not adequately explain the RFC limitation to "frequent interaction with supervisors and coworkers." (Document No. 17, pp. 12-14). Plaintiff suggests this RFC finding is inconsistent with the ALJ giving "more weight" to the opinions of Michael Fiore, PhD ("Fiore") and John Bevis, MA, LPA ("Bevis"), regarding Plaintiff's mental limitations. (Document No. 17, pp. 12-13) (citing Tr. 633). Fiore and Bevis opined that one of those mental limitations is that Plaintiff "is capable of relating to fellow workers and supervisors for shorter periods of time." <u>Id.</u>

In response, Defendant argues that giving "more weight" to the mental portion of an opinion that the ALJ gave "limited weight" to overall, "does not mean that the ALJ endorsed the entire mental portion of the opinion." (Document No. 21, p. 9). Defendant contends the ALJ

10

appropriately incorporated the mental assessment, as supported by medical evidence, in the RFC finding.  Id.  Defendant concludes there is no inconsistency here.  Id.

Plaintiff's concise reply seems to misunderstand Defendant's position and is unhelpful. (Document No. 22, pp. 2-3).

The undersigned notes that neither side mentions that besides explicitly addressing the Fiore/Bevins opinion in one part of the decision, the ALJ provided more discussion about Plaintiff's moderate limitation interacting with others earlier in the decision.  See (Tr. 17) (citing 637-641, 686-699, 810, 832-868).  Based on the foregoing, and Defendant's argument, the undersigned is satisfied that the RFC limitation to "frequent interaction with supervisors and coworkers and occasional interaction with the public" is supported by substantial evidence.  As such, the undersigned finds no error on this point.

### C.    Other RFC Limitations

### 1.  Migraines

Next, Plaintiff argues that the ALJ erred by failing to explain what limitations were included in the RFC to address her "inherently episodic" migraines.  (Document No. 17, pp. 14-15).  Due to the episodic nature of migraines, Plaintiff seems to suggest that the RFC is flawed because it "assumes Wood has the same functionality, every day."  (Document No. 17, p. 15).

In response, Defendant argues that Plaintiff is concluding that the presence of migraines is itself evidence of disability.  (Document No. 21, p. 10).  "If this argument were to prevail, all disability claimants diagnosed with migraines will be able to successfully argue that working a full[] day on a regular continuing basis is impossible simply by the fact she [or he] has migraines. Id.

Defendant also notes that Plaintiff once testified that she had migraines every three or four months.  Id. (citing Tr. 107).  Defendant concludes that the RFC is not improper, even if her migraines were more frequent, because the record shows that medications helped control Plaintiff's migraines.  Id.  (citing Tr. 514, 542, 717).

The undersigned notes that the ALJ decision addresses Plaintiff's migraines and headaches, but does not specifically explain if, or how, they were accounted for in the RFC.  However, Plaintiff does not explain what additional limitations would be necessary.  Under the circumstances, the undersigned is not persuaded there is cause for reversal or remand, especially where the record indicates that the migraines were infrequent and controlled by medication.

## 2.  Concentration, Persistence, or Pace ("CPP")

Plaintiff also notes that the ALJ found she "has a moderate limitation in concentrating, persisting, or maintaining pace."  (Document No. 17, p. 15) (citing Tr. 17).  However, Plaintiff contends that the ALJ failed to explain how it was determined, or what evidence supports, the finding that she can function for two (2) hours at a time, forty (40) hours a week.  (Document No. 17, p. 16).

In response, Defendant points to limitations the ALJ included in the RFC, in addition to restricting Plaintiff to light work, that account for Plaintiff's moderate limitation in concentration, persistence, and/or pace.  (Document No. 21, p. 11).

> The ALJ noted that Plaintiff can work a full day performing light
> work, provided that Plaintiff is restricted to, among other things:
>
> • unskilled work consisting of routine tasks not at production
>    rate pace;
> • maintaining concentration, persistence and pace for 2-hour
>    periods during the workday;
> • frequent interaction with supervisors and coworkers;
> • occasional interaction with the public, and

- a stable work environment, defined as few and infrequent changes to the work routine.

(*See* Tr. 18).

There is no question that these restrictions were imposed to account for Plaintiff's moderate difficulties in concentration, persistence and maintaining pace. To be clear, in the decision, the ALJ expressly noted that Plaintiff can maintain concentration, persistence and pace for 2-hour periods during the workday, provided that she is limited to unskilled, routine tasks in a non-production rate setting that requires only few and infrequent changes to the work routine

<u>Id.</u>

Defendant concludes that the ALJ sufficiently addresses Plaintiff's CPP, and unlike <u>Mascio</u>, includes several limitations in addition to "unskilled" work. (Document No. 21, p. 18).

In reply, Plaintiff argues that there is no "logical explanation" for the ALJ's RFC finding, and therefore, the decision should be reversed.

The undersigned is persuaded that the ALJ's discussion of, and accommodations for, Plaintiff's CPP are sufficient. <u>See</u> (Tr. 17-18). Notably, in addressing CPP, the ALJ cites to the opinion of Fiore and Bevis, which provides in part "[s]he maintained fair attention and concentration when performing simple tasks." <u>See</u> (Tr. 17) (citing Tr. 630-633). Later, the ALJ describes treatment notes describing Plaintiff as having "an ability to concentrate and stay on task." (Tr. 20) (citation omitted). Based on the foregoing, and the parties' arguments, the undersigned will respectfully decline to recommend that the ALJ's decision be reversed or remanded.

### 3. Production Rate Pace

In addition, Plaintiff argues that the RFC's statement that she is "limited to performing unskilled work consisting of routine tasks not at a production rate pace, maintaining concentration persistence and pace for 2-hour periods during the workday," "is too vague for judicial review." (Document No. 17, p. 160 (citing Tr. 18; and <u>Thomas v. Berryhill</u>, 916 F.3d 307 at *8-9 (4th Cir.

2019).  Plaintiff contends that using the phrase "not at a production rate pace" is cause for reversal because the ALJ did not explain the term.

Defendant notes that "production rate pace" is defined in the Dictionary Of Occupational Titles ("DOT") as follows:

> [A] job should be rated [l]ight [w]ork … when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.  NOTE:  The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

(Document No. 21, p. 12) (quoting Shaw v. Kijakazi, 2021 WL 3079905, at *7 (E.D.N.C. July 21, 2021)).

Defendant goes on to note that "production rate pace" describes "an act that requires constant movement or engagement, similar to the type of work a worker may perform on an assembly line."  (Document No. 21, p. 13).  "[R]ead in context, it is readily apparent that when the ALJ found that Plaintiff could perform 'unskilled work consisting of routine tasks not at production rate pace,' she meant that Plaintiff could do unskilled work consisting of routine tasks in an environment that does not demand constant production."  Id.

Plaintiff's reply suggests, for the first time, that two of the jobs identified by the ALJ are "'light' – so they must involve production rate pace."  (Document No. 22, pp. 3-4).  Plaintiff seems to suggest there is an apparent conflict between the VE testimony and the DOT.  (Document No. 22, p. 4).

The undersigned first notes that the ALJ determined that the VE's testimony was consistent with the DOT, and that the VE's testimony was "based on her training, education, and experience." (Tr. 24);  see also (Tr. 123-127).

14

The undersigned is not persuaded that the ALJ erred by limiting Plaintiff "to performing unskilled work consisting of routine tasks **not at a production rate pace**…." (Tr. 18) (emphasis added). Rather, the decision includes additional descriptors and explanation to "lend sufficient context to discern what the ALJ intended." O'Dell v. Saul, 2021 WL 1233480, at *6 (W.D.N.C. Apr. 1, 2021). "[C]ases show that the inclusion of a 'non-production work' limitation in the RFC is not categorically reversable, but must be evaluated on a case-by-case basis to see if there is adequate explanation and substantial evidence to support the restriction." Id. at *5. Moreover, Defendant's explanation of the use of the term "production rate pace," and how it applies here (and in other cases), is logical, helpful, and persuasive. See (Document No. 21, p. 13).

Again, the undersigned will decline to adopt Plaintiff's allegation of error.

### D.     Social Security Rulings

Plaintiff also argues that the ALJ erred by failing "to perform the analysis required by SSRs 83-10, 83-12, and 83-14." (Document No. 17, p. 18). More specifically, Plaintiff contends that the ALJ

> failed to assess whether Wood's occupational base more closely approximates:
>
> • the light occupational base of 1600 occupations (which would justify the ALJ's use of light grid rule 202.20 as a framework, resulting in a finding of not disabled); or
> • the sedentary occupational base of 200 occupations (which would require using sedentary grid rule 201.14 as a framework, resulting in a finding of disabled).

Id.

Plaintiff argues that the ALJ should have applied "the sedentary grid rule, instead of the light grid rule, as its framework." (Document No. 17, p. 19).

In response, Defendant contends that Plaintiff's "unusual argument" is "rooted in [a] misunderstanding of the grid rules and the SSRs she claims the ALJ violated." (Document No.

21, p. 14). Defendant argues that the three jobs identified by the ALJ "are mere 'representative occupations.'" (Document No. 21, p. 15) (quoting Tr. 24). Furthermore, Defendant notes that the VE testified that the three representative jobs Plaintiff could perform are available in the national economy in the numbers of 111,000, 18,000, and 35,000." Id. (citing Tr. 24).

Defendant concludes that "nothing in those SSRs requires the ALJ to use a sedentary grid rule rather than a light grid rule" and that the ALJ "properly relied on the expertise of a vocational expert to determine whether a person with Plaintiff's RFC can do any work in the national economy." Id.

In reply, Plaintiff argues that the VE "identified only three occupations, and did not indicate there might be more." (Document No. 2, p. 4). "So, it offends common sense that three light unskilled occupations should render Wood not disabled." Id.

The undersigned is not persuaded there is error here, or that Plaintiff has adequately or accurately addressed the ALJ's finding or the Defendant's argument. If there is any error here, it appears to be harmless. The undersigned is satisfied that the ALJ has relied on substantial evidence, including VE testimony, to determine at step five that there are occupations in sufficient numbers that the Plaintiff could have performed during the relevant time period.

### E. Constitutional Issue

Plaintiff raises a new argument in its "…Response to Defendant's Motion For Summary Judgment" that the ALJ's decision violates the U.S. Constitution because former Commissioner of Social Security, Andrew Saul ("Saul"), "was unconstitutionally appointed, so delegation of his authority was unconstitutional." (Document No. 22, p. 5). Plaintiff contends that the Justice Department interprets recent decisions by the Supreme Court as concluding that "the statutory restriction on removing the Commissioner [of SSA] is unconstitutional." Id. (citing "45 op.

O.L.C. (July 8, 2021)";  Document No. 22-2) (citing <u>Seila Law LLC v. Consumer Financial Protection Bureau</u>, 140 S.Ct. 2183 (2020) and <u>Collins v. Yellen</u>, 141 S.Ct. 1761 (2021)).

Plaintiff notes that the ALJ's decision underlying this case, and the Appeals Council's denial of review, "were issued during Saul's tenure, premised on delegation of his authority."  <u>Id.</u> Plaintiff concludes that this case should be remanded "to be heard by a Constitutionally appointed officer."  <u>Id.</u>

Defendant asserts that raising a new argument in the "…Response to Defendant's Motion For Summary Judgment" violates LCvR 7.2 (e), which states in part that such a reply brief "may only address issues raised for the first time in the Commissioner's Motion and Memorandum." (Document No. 25, p. 1) (quoting LCvR 7.2(e)).  Defendant further asserts that even if the Court considers Plaintiff's belated Constitutional argument, Plaintiff still cannot show an entitlement to relief.  Defendant makes several arguments against Plaintiff's Constitutional claim.  (Document No. 25, pp. 2-10).

First, Defendant argues that <u>Collins v. Yellen</u> forecloses relief here because it "establishes that a plaintiff seeking relief from a challenge to a removal restriction must show that restriction caused 'compensable harm.'"  (Document No. 25, p. 2) (citing <u>Collins</u>, 141 S.Ct. at 1789). "Plaintiff demonstrates no connection between the denial of her disability claim by an ALJ and the Social Security Act's restriction on the President's authority to remove the Commissioner." <u>Id.</u>

Next, Defendant notes that "the ALJ who adjudicated Plaintiff's disability claim did so under a July 2018 ratification of her original appointment by then-Acting Commissioner Nancy Berryhill, who was removable at will from her Acting role."  (Document No. 25, p. 2).  According to Defendant, "[f]or this reason alone, the Commissioner's statutory tenure protection, 42 U.S.C.

§ 902(a)(3) – the subject of Plaintiff's separation of powers challenge – could not have caused any injury to Plaintiff." Id. Defendant then notes that in a different context the Supreme Court in Collins "concluded that where a challenged agency action was taken by an 'Acting Director' who was 'removable at will,' the Presidentially-appointed, Senate-confirmed Director's statutory removal restriction bears no connection to the action." (Document no. 25, pp. 2-3) (citing Collins, 141 S.Ct. at 1782).

Defendant notes that Collins teaches the following:

> actions taken by properly-appointed officials—which include both the ALJ who presided over Plaintiff's claim (whose appointment was ratified by an Acting Commissioner without tenure protections) and the Commissioner who occupied the office when the ALJ issued the decision (appointed by the President with advice and consent of the Senate)—are not void. Relief is available in removal challenges only where the alleged injuries are caused by officials subject to the challenged removal restrictions, *and* where those restrictions themselves "inflict[ed] compensable harm" upon plaintiffs. *Id*. at 1789.

(Document No. 25, p. 5). Here, Defendant contends that Plaintiff cannot show the Section 902(a)(3) removal restriction caused the denial of her claim. Id. "[S]he cannot conceivably show how the President's supposed inability to remove the Commissioner without cause might possibly have affected any ALJ's disability benefits decision, much less the decision on Plaintiff's specific claim." Id.

Finally, Defendant cites to "[h]armless error and other established remedial doctrines" that support a finding that Plaintiff is not entitled to relief. (Document No. 25, pp. 7-10).

"Plaintiff's Surreply…" argues that Acting Commissioner Berryhill was not removable at the will of the President. (Document No. 26, p. 1) (citing 42 U.S.C. § 903(a)(3)). Therefore, Plaintiff concludes that she is "entitled to a new hearing with a Constitutionally appointed ALJ." Id. (citing Tafoya v. Kijakazi, 551 F.Supp.3d 1054 (D.Col. July 29, 2021)).

18

The undersigned finds Defendant's arguments most persuasive. Moreover, Defendant's position appears to be consistent with other decisions by this Court on this same issue. For example, the Honorable Kenneth D. Bell recently issued an Order that is instructive here.

> The Court first finds that the Commissioner's final decision was not constitutionally defective. In *Collins v. Yellen*, 141 S.Ct. 1761 (2021), the Supreme Court held that where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction caused her alleged harm. In *Collins*, the Court reasoned that the relevant agency officials were "properly appointed" under a statute that exhibited "no constitutional defect in the ... method of appointment" and that "the unlawfulness of [a] removal provision" does not "strip [an official] of the power to undertake the other responsibilities of his office[.]" The Court continued that "there is no reason to regard any of the actions taken" by the agency during this period "as void." *Id.* at 1787,1788 n. 23. In this case, Plaintiff, as in *Collins*, grounds his constitutional challenge only on the relevant removal restriction not on the propriety of the Commissioner's appointment. Yet Plaintiff offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits. Plaintiff simply argues that all actions taken by the Commissioner – and in turn his appointed ALJ's – are void due to the unconstitutional removal provision. However, *Collins* expressly rejects this view. *Id.* Therefore, the final decision of the ALJ is not constitutionally defective.

Chipley v. Kijakazi, 5:21-CV-101-KDB, 2022 WL 2758612, at *3 (W.D.N.C. July 14, 2022).[5]

See also Bril v. Kijakazi, 5:22-CV-002-KDB, 2022 WL 3702916, at *3, n. 2 (W.D.N.C. Aug. 26, 2022) ("This Court has rejected this argument many times") (citations omitted); and Sams v. Comm'r of Soc. Sec., 1:20-CV-367-DCK, 2022 WL 3579891, at *6 (W.D.N.C. Aug. 19, 2022) ("Irrespective of who *appointed* the ALJ in this case – that is, an Acting Commissioner or a presidentially-appointed Commissioner, Plaintiff's argument still falls flat because she has not

---

[5] The undersigned observes the parties in Chipley were represented by the same attorneys that appear in this case. Neither side filed a Notice of Supplemental Authority in this case.

proven any causation between the removal provision and the ALJ's decision in her individual case").

Other judges in this district, as well as the Fourth Circuit Court of Appeals, have reached similar conclusions regarding Plaintiff's Constitutional argument. See Harris v. Kijakazi, 2022 WL 2987928 at *3 (4th Cir. July 28, 2022) ("There are numerous defects in this argument"); Williams v. Kijakazi, 1:21-CV-141-GCM, 2022 WL 2163008, at *2 (W.D.N.C. June 15, 2022) ("Plaintiff herein offers no evidence to demonstrate a nexus between Section 902(a)(3)'s removal restriction and the denial of her benefits claim."); Belanger v. Comm'r of Soc. Sec., 5:21-CV-019-RJC, 2022 WL 3205183, at *2-3 (W.D.N.C. Aug. 8, 2022); Goode v. Comm'r of Soc. Sec., 1:21-CV-103-FDW, 2022 WL 3652665, at *2-3 (W.D.N.C. Aug. 24, 2022); Watkins v. Kijakazi, 1:20-CV-380-MR-WCM, 2022 WL 822166, at *1 (W.D.N.C. Mar. 18, 2022); and Satterthwaite v. Kijakazi, 3:20-CV-724-MOC, 2022 WL 468946, at *3-8 (W.D.N.C. Feb. 15, 2022).

Based on the foregoing, the undersigned cannot recommend that this case be remanded based on Plaintiff's Constitutional argument.

## CONCLUSION

The undersigned first notes, as observed above, that two different ALJs have found that Plaintiff was not disabled from July 11, 2010, through at least October 20, 2017. See (Tr. 26, 179). The latest decision on appeal to this Court certainly seems to be thorough. Moreover, the undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

**RECOMMENDATION**

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion for Summary Judgment" (Document No. 16) be **DENIED**; "Defendant's Motion For Summary Judgment" (Document No. 20) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

**IT IS FURTHER RECOMMENDED** that "Plaintiff's Motion for Consideration of Surreply on Constitutional Issue" (Document No. 27) be **GRANTED**.

**TIME FOR OBJECTIONS**

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 208). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: September 21, 2022

David C. Keesler
United States Magistrate Judge